UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRETT MICHAEL MALONE,<br><br>        Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent. | Case No. 1:25-cv-00418-DCN<br>            1:21-cr-00155-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Petitioner Brett Michael Malone's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (the "Petition"). Dkt. 1; CR-155, Dkt. 163.[1] The Government opposed Malone's Petition. Dkt. 9. Malone did not reply.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, the Court will decide the Petition on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(e)(1)(B). For the reasons set forth below, the Court DENIES Malone's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.

## II. BACKGROUND

### A.  Factual Background

The background of the underlying criminal case is known to all parties, has been

---

[1] In this Order, "CR-155" is used when citing to the underlying criminal case record in Case No. 1:21-cr-00155-DCN-1; all other references are to the instant civil case.

outlined in prior decisions in the criminal case, and is incorporated here by reference.

Briefly though, Malone met the victim (hereinafter "MV1") on Facebook in February 2021. CR-155, Dkt. 150, at 145–46. MV1 was a minor at the time, but her Facebook profile listed her as 19. *Id.* Malone and MV1 decided to meet up, and MV1 later clarified to Malone that she was a freshman in high school. *Id.* at 153. Despite learning her actual age, Malone continued to message MV1 through Facebook. *Id.* at 155–56. He offered her money to sleep with him, offered her gifts, and sent her explicit pictures and videos of himself. *Id.* Malone engaged MV1 in sexual intercourse on at least two occasions. *Id.* at 157, 163.

Homeland Security Investigations ("HSI") was alerted of the Facebook messages on MV1's cellphone in June 2021 by MV1's mother. CR-155, Dkt. 149, at 34–35. An undercover HSI agent then assumed MV1's online identity and started communicating with Malone while posing as MV1. *Id.* at 53–55. The agent was able to confirm from their conversation that Malone knew MV1 was a minor. *See id.* at 55, 58. Malone repeatedly asked to meet MV1 and communicated his intentions of carrying out sexual activity with her. *Id.* at 59–64. The agent, posing as MV1, then told Malone that MV1 was staying at a hotel in Boise. *Id.* at 65–68. Malone was subsequently arrested when he attempted to meet MV1 at the location. *Id.* at 69.

Malone was then held and questioned by HSI agents. *See id.* at 72–73; Dkt. 9, at 5. At the outset of the interview, agents provided Malone his *Miranda* warnings. *Id*. Malone confirmed his understanding of his rights, including his right to have an attorney present during questioning, and proceeded to sign a form waiving his rights. Dkt. 9, at 5–6. During

MEMORANDUM DECISION AND ORDER - 2

questioning, Malone admitted to having engaged MV1 in sexual activity, but insisted he believed she was 19 years old. *Id.* at 6.

### B. Procedural Background

On October 27, 2022, a jury convicted Malone of one Count of Attempted Coercion and Enticement of a Minor in violation of 18 U.S.C. § 2422(b). CR-155, Dkt. 117. Additionally, Malone pleaded guilty to a sentencing enhancement pursuant to § 2260A for committing the crime while having a duty to register as a sex offender. *Id.*, Dkt. 137. The Court sentenced Malone to a total of 412 months in prison. *Id.*. Malone appealed his conviction to the Ninth Circuit. *Id.*, Dkt. 138. On July 30, 2024, the Ninth Circuit affirmed the Court's conviction and sentence. *Id.*, Dkt. 161.

Malone filed this Petition on July 25, 2025. Dkt. 1. In it, Malone argued his defense counsel was ineffective because he failed to evaluate whether Malone had voluntarily waived his *Miranda* rights given his intellectual disability, and he also failed to file a motion to suppress the statements Malone made to law enforcement during the interrogation. Dkt. 1-1, at 1–2. The Government moved to extend its time to respond (Dkt. 7) which the Court granted (Dkt. 8). After the Government filed its response (Dkt. 9), Malone's reply brief was due on March 27, 2026, but he never filed anything. The Court has waited an additional three months to give Malone every opportunity, but nothing has been filed.

The matter is ripe for review.

### III. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, there are four grounds under which a federal court

may grant relief to a prisoner who challenges the imposition or length of his incarceration: that (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) "the sentence is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

Relief under § 2255 is afforded "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Further, "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011).

A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062–63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). In a § 2255 motion, conclusory statements are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980); *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not

MEMORANDUM DECISION AND ORDER - 4

warrant habeas relief.").

## IV. ANALYSIS

The Court is in a unique position, having presided over this case from its inception. It issued pre-trial rulings, presided over the jury trial, and handled all matters post-trial. It is familiar with the facts and Malone's arguments regarding his counsel's performance.

The Court turns to Malone's allegations.

### A. Ineffective Assistance of Counsel

Malone highlights two instances he believes illustrate how his attorney, Andrew Parnes,[2] was deficient in his representation: (1) failing to challenge the voluntariness of Malone's *Miranda* waiver, and (2) failing to file a motion to suppress the same. The Court will address each allegation in turn. None prevail.

As the United States Supreme Court has noted, "[a] court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).[3]

To successfully claim ineffective assistance of counsel, Malone must satisfy the two-part *Strickland* test. Malone must show that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Williams v. Taylor*, 529

---

[2] Attorneys Andrew Parnes and Dennis Benjamin were both appointed as Malone's defense counsel. But because Parnes was primarily involved in the case—particularly as applied to the present allegations—the Court will refer only to him.

[3] In applying that presumption, a court must try "to eliminate the distorting effects of hindsight" and instead "to reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

MEMORANDUM DECISION AND ORDER - 5

U.S. 362, 390–91 (2000) (citing *Strickland*, 466 U.S. at 687).

To satisfy the first prong related to deficiency of counsel, "a defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 363; *see also Strickland*, 466 U.S. at 688. To do so, Petitioners must show "gross incompetence" on the part of their attorneys. *Kimmelman v. Morrison*, 477 U.S. 365, 366–67 (1986). There is a strong presumption that a legal counsel's conduct falls within the range of sound trial strategy. *Strickland*, 466 U.S. at 669.

Second, a petitioner must show he was prejudiced by his counsel's errors and that "there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kimmelman*, 477 U.S. at 375.

*1. Defense Counsel's Evaluation of Whether Malone Voluntarily Waived His Miranda Rights Given His Intellectual Disability*

Malone first alleges Parnes's representation was inadequate because he failed to properly evaluate whether Malone's waiver of his *Miranda* rights was voluntary given that he suffers from an intellectual disability and has a lower IQ.

Under *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966), procedural safeguards protect a defendant under custodial interrogation from making self-incriminating statements to law enforcement. A defendant may waive these safeguards, or rights, only if the waiver was made "voluntarily, knowingly and intelligently[,]" otherwise, the prosecution may not use the statements obtained from the interrogation as evidence in trial. *Id. See also id.* at 479; *U.S. v. Garibay*, 143 F.3d 534, 537–39 (9th Cir. 1998) (holding that the court erred in not suppressing inculpatory statements because defendant was not

sufficiently proficient in English to understand and waive his rights, and no Spanish-speaking agent was enlisted, among other findings).

Malone claims Parnes failed to evaluate his intellectual competency to voluntarily waive his *Miranda* rights during police questioning.[4] Dkt. 1-1, at 2. According to his Petition, Malone was a "mentally deficient person who did not possess the ability to understand or waive his *Miranda* rights . . . . As such[,] there was no understanding of *Miranda* rights at all on [Malone's] part . . . when giving statements [to law enforcement] without the assistance of counsel[.]" *Id.*

This claim, however, is belied by the record. When Parnes first met Malone, he was concerned about Malone's intellectual disability and hired a psychologist to perform an assessment. Dkt. 9-2.[5] He then researched the issue of Malone's competency to stand trial and to waive his *Miranda* rights. *Id.* Parnes also affirmatively moved for a competency evaluation. CR-155, Dkt. 16. Subsequently, a competency hearing was held to evaluate Malone's ability to stand trial. CR-155, Dkt. 43. Although the primary purpose of the hearing was to evaluate his competency to stand trial, the intellectual assessments performed on Malone by experts in preparation for that hearing were extensive,[6] and the

---

[4] Malone also asserts, as a factual matter, that he did not actually waive his *Miranda* rights during the interrogation with law enforcement. Dkt. 1-1, at 2. However, the Court will not discuss that matter here as underlying factual disputes are not challengeable in a 2255 petition if not raised previously on appeal. While Malone's appeal included numerous issues, this was not one of them. Accordingly, the Court will only address whether defense counsel evaluated his intellectual competency to voluntarily waive his *Miranda* rights.

[5] As part of his funding request for the evaluation, Parnes explained the purpose was to assess Malone's competency to stand trial, and "his mental state at the time of the offense and his *subsequent statement to law enforcement*." Dkt. 9-2 (emphasis added).

[6] Dr. James Davidson and Dr. Ryan Nybo both assessed Malone's intellectual competency. CR-155, Dkt. 43, at 1–2. Between the two of them, Malone was evaluated based on his IQ, adaptive functioning, vocabulary and verbal skills, understanding of the details of his case and the relevant legal proceedings,

MEMORANDUM DECISION AND ORDER - 7

results also informed Malone's ability to understand and waive certain rights.[7] *See id.* at 4–7. Furthermore, at trial, Malone's intellectual competency was discussed when expert testimony was presented regarding his low IQ and intellectual function. Dkt. 9, at 8–9.

The record thus shows that Parnes investigated Malone's intellectual capacity to understand and waive his *Miranda* rights as part of his overall review and assessment of Malone's mental capacity to stand trial, and he exercised his reasonable professional judgment not to pursue further investigations into the matter. *See Strickland*, 466 U.S. at 690–91.

The Court cannot agree with Malone that Parnes failed to evaluate his intellectual competency to voluntarily waive his *Miranda* rights. Parnes researched the matter, hired an expert, and requested a competency hearing to evaluate Malone's intellectual ability.

2. *Defense Counsel's Decision Not to File a Motion to Suppress Malone's Statements Made to Law Enforcement*

Second and relatedly, Malone alleges Parnes's representation was deficient because he did not file a motion to suppress Malone's statements to law enforcement.

As noted, to plead ineffective assistance of counsel, a defendant has the burden to show that counsel's performance was unreasonable. *See Strickland*, 466 U.S. at 688. In evaluating such claims, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and that] the

---

and other psychological tests. *Id.* at 4–6. Both agreed Malone suffers from mild intellectual disability, but they disagreed as to his competency to stand trial. *Id.* at 4 & n.1.

[7] Malone knew that he had the right not to testify about his prior sex offense conviction, and that if he did testify, then that conviction could be admitted as evidence. CR-155, Dkt. 43, at 5–6.

challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Malone claims Parnes's decision to not file a motion to suppress his statements was "a failure to fulfill a basic duty of representation." Dkt. 1-1, at 2. That said, Malone also recognizes doing so was a "tactical decision." *Id*. During his interrogation with HSI agents, Malone admitted to having sexual contact with MV1, but he maintained his innocence that he did not know MV1 was a minor. Dkt. 9, at 6. Malone believes that because his waiver of his *Miranda* rights was not voluntary and knowing, the potentially incriminating recorded interview, including the statements he made to HSI agents, should have been suppressed as evidence. Dkt. 1-1, at 2. He faults Parnes for not officially filing a motion to address those concerns.

As explained, Parnes evaluated the issue of Malone's intellectual competency to waive his *Miranda* rights, and instead of trying to suppress the interview, he strategically relied on it to bolster Malone's defense at trial that Malone did not know MV1 was a minor, thus negating his intent. Dkt. 9, at 15–16. Parnes's decision not to move to suppress the interview as evidence was a strategic move that is subject to substantial deference by the court. *See Strickland*, 466 U.S. at 689; *Kimmelman*, 477 U.S. at 385 (holding that counsel's failure to file a timely motion to suppress was unreasonable because it was not strategy but a failure to conduct any discovery). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

Because the decision not to file a motion to suppress the statements Malone made

MEMORANDUM DECISION AND ORDER - 9

to law enforcement was part of the defense strategy, the Court, applying substantial deference, finds the decision constitutes reasonably effective assistance of counsel. Malone thus cannot show that Parnes's performance was deficient.

### 3. *Whether Defense Counsel's Performance Prejudiced the Outcome*

As explained above, to prove prejudice, a defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kimmelman*, 477 U.S. at 375; *see also Strickland*, 466 U.S. at 695 ("[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."). In other words, even assuming arguendo that Parnes's actions were deficient and the Court had suppressed the statements Malone made to law enforcement, Malone must also show that there is a reasonable probability that the jury would have rendered a different verdict. This does not mean that Malone bears the burden to conclusively show that the jury would have rendered a different verdict, but merely that there is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In light of all the other evidence in this case supporting the jury's verdict, the Court finds that Malone cannot meet that burden.

When Malone first met MV1 on Facebook, her profile page listed her age as 19, but her real age was 14. CR-155, Dkt. 150, at 146. Shortly after, when they met in person, Malone asked her if she "was still in high school," to which she replied "yes." *Id.* at 153. Later, because Malone "became really obsessive and one-sided," MV1 tried to "push him away" by telling him that she "was 15 and that [she] was a freshman in high school." *Id.*

Malone responded by saying "age is just a number." *Id.*

Despite MV1 telling him her real age and trying to distance herself from him, Malone "became more insistent, offering [her] money to sleep with him" and sending her explicit pictures and videos of himself. *Id.* at 155–56. On one occasion, MV1 told Malone to "come over to [her] house because [her] parents went to one of [her] aunt's houses." *Id.* at 156. He went over and they had sexual intercourse. *Id.* at 157.

On another occasion, when MV1's parents were gone, Malone came to pick her up again. *Id.* at 161. This time, Malone offered to drive MV1 to her brother in Nebraska when she expressed her desire to "run away from home." *Id.* at 160–61. However, shortly after he started the drive, Malone changed his mind and drove her to his house in Adrian, Oregon, where they again engaged in sexual intercourse. *Id.* at 162–63.

Pursuant to Federal Rule of Evidence 404(b), the government also presented evidence of Malone's prior sex offenses involving S.T., a 14-year-old girl, and C.B., a 15-year-old girl. CR-155, Dkt. 151, at 386–90. Evidence regarding Malone's Facebook conversation with B.H., a 15-year-old girl, further signaled to the jury that Malone has had prior interactions with underage girls, and that he is capable of recognizing a girl's age through their online conversations. *See id.* at 393–99.

In short, even if the statements that Malone made to law enforcement had been suppressed, considering all the other evidence presented, a jury could have reasonably concluded that Malone was guilty, and there is no reasonable probability that their verdict would have been different but for counsel's performance.

### 4. *Conclusion*

Parnes's performance was not deficient in any way. He thoughtfully evaluated the issue of Malone's waiver of his *Miranda* rights, and as a matter of trial strategy, decided not to file a motion to suppress the statements made to law enforcement. Even if Parnes's performance was deficient, Malone failed to prove a reasonable probability of prejudice in the outcome. Malone has not shown—pursuant to *Strickland*—that any of Parnes's actions, in combination or standing alone, amounted to ineffective assistance of counsel. His Petition is, therefore, dismissed.

## V. CERTIFICATE OF APPEALABILITY

A defendant cannot appeal a final order on a § 2255 motion unless the district court or court of appeals issue a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1) (providing that appeal cannot proceed unless "circuit justice or judge issues a certificate of appealability"); *U.S. v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997) (interpreting "circuit justice or judge" to include district judges). The court should issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires the defendant to show that "a reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

To promote efficiency, the district court is required to issue or deny a COA in the same order denying the defendant's § 2255 motion. *See* Rule 11(a) of the Rules Governing § 2255 Proceedings. If the district court denies the COA, the court should state the reason for its decision. *Aznar*, 116 F.3d at 1270. The defendant cannot appeal the denial of the

COA but can file a notice of appeal and request a COA from the court of appeals pursuant to Federal Rule of Appellate Procedure 22. *See* Rule 11(a) of the Rules Governing § 2255 Proceedings. Upon so doing, the district court forwards to the court of appeals the defendant's case file, final order, and notice of appeal. *See Asrar*, 116 F.3d at 1270.

In this case, the Court denies the COA. As explained in the preceding sections, Malone's claims do not rise to the level warranting any reduction or vacatur of his trial or sentence. No reasonable jurist would disagree with this assessment. Therefore, should Malone wish to appeal, he must timely file a notice of appeal with this Court and request a COA from the Ninth Circuit.

## VI. CONCLUSION

The Court finds nothing in the record to indicate any deficient performance or prejudice on Parnes's part. The bulk of Malone's Petition is made up of self-serving statements that are either directly contradicted by the record or simply based upon his opinion and supposition of what might have been. But without any facts in support, none of the allegations can sustain a finding of ineffective assistance of counsel.

For the reasons stated above, the Court finds no reason to vacate or remand Malone's conviction or sentence. Furthermore, the Court finds it unnecessary to conduct an evidentiary hearing on the same. Thus, the Petition is DENIED.

## VII. ORDER

**IT IS HEREBY ORDERED:**

1. Malone's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Dkt. 1; CR-155, Dkt. 163) is **DENIED**. The Clerk of the Court is

MEMORANDUM DECISION AND ORDER - 13

directed to file this Order in both cases.

2. The Court finds there is no need for an evidentiary hearing.

3. No certificate of appealability shall issue. Malone is advised that he still may request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Ninth Circuit Rule 22-1. To do so, he must file a timely notice of appeal.

4. If Malone files a timely notice of appeal, and not until such time, the Clerk of the Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals.

DATED: July 21, 2026

David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 14